UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SELECT SPECIALTY HOSPITAL - SIOUX FALLS, INC., a Missouri business corporation,<br><br>    Plaintiff,<br><br> vs.<br><br>BRENTWOOD HUTTERIAN, BRETHREN, INC., a South Dakota non-profit corporation; and HUTTERIAN BRETHREN GENERAL MEDICAL FUND, a South Dakota non-profit corporation;<br><br>    Defendants. | 4:19-CV-04171-KES<br><br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Select Specialty Hospital – Sioux Falls, Inc., seeks declaratory relief against defendants, Brentwood Hutterian Brethren, Inc. (Brentwood) and the Hutterian Brethren General Medical Fund (the Fund).[1] Docket 25. Brentwood and the Fund move for summary judgment. Docket 73. Select Specialty opposes the motion. Docket 81. For the following reasons, the court grants the motion for summary judgment.

---

[1] Select Specialty brought several other claims against these defendants and a third defendant, South Dakota Medical Holding Company, Inc. (Dakotacare). Docket 25. The court previously granted Dakotacare's motion for summary judgment on all claims against it, and it granted Brentwood and the Fund's motion for summary judgment on all claims except the claim for declaratory relief. Docket 68.

**FACTUAL BACKGROUND**

A full factual background is recounted in the court's order on the previous motions for summary judgment. Docket 68. The following is a summary of the facts bearing on the claim for declaratory relief, viewed in the light most favorable to Select Specialty as the non-moving party.

This dispute arises out of treatment Select Specialty provided to Mary, a member of the Brentwood Hutterite Colony, between March and December 2018. Docket 56 ¶¶ 1, 31-32. The Fund is a consortium of Hutterite Colonies, including Brentwood, that established a self-funded Hutterian Brethren General Medical Plan to provide medical coverage to Hutterite Colony members. *Id.* ¶¶ 1-2. At all times that Select Specialty provided care to Mary, she was covered by the Plan. *Id.* ¶ 30.

Mary's medical team determined that she would need to be transferred to another facility for continued rehabilitation. *Id.* ¶ 38. One such facility was located at Avera Prince of Peace, but that facility only served patients eligible for South Dakota Medicaid. *See* Docket 63-4 at 2. Jared Wollman, Brentwood's Secretary/Treasurer and a director of the Fund, worked with Mary's family to apply for Medicaid. Docket 53 ¶ 10; *see* Docket 60 ¶ 29; Docket 56 ¶¶ 51-52. Mary was approved for Supplemental Security Income (SSI) benefits effective May 1, 2018. Docket 47-6 at 1. This made Mary automatically eligible for Medicaid. *Id.* Mary was also eligible for retroactive Medicaid, meaning her Medicaid coverage was effective March 1, 2018. Docket 56 ¶ 69. Wollman

retroactively terminated Mary's coverage under the Plan to coincide with the effective date of her Medicaid coverage. Docket 48-6 at 1.

Select Specialty sought retroactive authorization from Medicaid for all of Mary's care, which Medicaid approved. Docket 37-25 at 1, 3. The total charges incurred for Mary's treatment were $1,979,378.40. Docket 56 ¶ 36. Select Specialty accepted payment from Medicaid in an amount substantially less than the total charges and less than the amount it claims it was entitled to under the terms of the Plan. *Id.* ¶¶ 37, 109.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le*

3

*Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

"It is . . . well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state." *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996). Here, South Dakota law governs substantive issues.

## DISCUSSION

### I. Select Specialty's Claim for Declaratory Relief

Select Specialty claims that Brentwood and the Fund "wrongfully purported to terminate [Mary]'s insurance coverage" under the Plan, rendering the termination "ineffective and invalid as a matter of law[.]" Docket 25 ¶¶ 91-92. It also alleges that both Brentwood and the Fund owed Mary a fiduciary duty and that they breached this duty "in placing the avoidance of paying for care that the Plan legitimately owed and had preauthorized over and above [Mary]'s best interests" when they terminated Mary's coverage, and that the defendants "knew [Mary] would receive higher quality care if she remained covered under the Plan than" under Medicaid. *Id.* ¶¶ 88-90. Select Specialty

4

asserts that, because Mary assigned her rights under the Plan to Select Specialty, it has standing to contest her termination and recover benefits due under the Plan and to have the Plan compensate it for the treatment it provided to Mary. *Id.* ¶¶ 86-87, 93. It thus seeks a declaratory judgment that (1) it has standing to assert Mary's rights under the Plan; (2) Mary's termination from the Plan was unlawful and thus ineffective; and (3) Select Specialty "is entitled to require the Plan [to] pay out benefits in accordance with its terms for services that were preauthorized." *Id.* at 13.

## A. Application of 42 C.F.R. § 447.15

Defendants argue that this claim, like Select Specialty's breach of contract, unjust enrichment, and quantum meruit claims, is barred by a federal Medicaid regulation, 42 C.F.R. § 447.15. Docket 77 at 11. This regulation requires that participating "providers . . . accept, as payment in full, the amounts paid by [Medicaid] plus any deductible, coinsurance or copayment required by [Medicaid] to be paid by the individual." This means that a provider cannot accept payment from Medicaid for services it provides to a Medicaid patient, and then seek additional payment for those same services from either the patient or a third party. *See Robinett v. Shelby Cnty. Healthcare Corp.*, 895 F.3d 582, 587 (8th Cir. 2018) ("Unless and until a medical services provider . . . accept[s] payment from Medicaid, the provider is free to attempt to recover from the patient or a liable third party.").

The court previously held that some of Select Specialty's other claims were barred because each sought "payment for the services it provided to Mary

5

and for which it accepted Medicaid payment." Docket 68 at 14. According to defendants, the claim for declaratory relief is similarly barred because the only damages Select Specialty seeks in its claim for declaratory relief is "payment from the Plan for the Covered Services" that were provided to Mary, which it cannot seek from a third party after accepting Medicaid. Docket 25 ¶ 94; Docket 77 at 9-10.

If the court granted a declaratory judgment that Select Specialty has standing to assert Mary's rights under the plan, however, then Select Specialty would be stepping into the shoes of Mary, and the court would analyze Select Specialty's claim as if Mary were making that claim herself. And 42 C.F.R. § 447.15's prohibition on seeking additional payment applies only to providers. Nothing in this regulation bars the patient from seeking payment from a third-party. It may be that payment at the contracted rate for the services Select Specialty provided to Mary is not available or the correct measure of damages Mary could seek from defendants, but that does not mean that 42 C.F.R. § 447.15 bars the claim for declaratory relief at its outset.

**B. The Nature of Relief Sought by Select Specialty**

Select Specialty claims it is seeking declaratory relief, but the court "must look beyond the facial allegations of the complaint to determine the true nature of this suit." *Sellers v. Brown*, 633 F.2d 106, 108 (8th Cir. 1980) (affirming dismissal because the fact "[t]hat the complaint [was] cast in terms of declaratory judgment cannot alter the fact that what in substance is sought is a money judgment . . . ." (citation omitted)); *Weinreb v. Hosp. for Joint Diseases*

6

*Orthopaedic Inst.*, 285 F. Supp. 2d 382, 388 (S.D.N.Y. 2003) ("Although Count 3 purports merely to request an injunction directing the Hospital to enroll [the plaintiff] *nunc pro tunc* in the Plan, . . . this is a thinly disguised attempt to recover the money that [plaintiff's] estate . . . would have been paid had he completed the Enrollment Form.").

In its Amended Complaint, Select Specialty repeatedly claims that under the purported assignment, it is entitled to payment from the Plan for the services it provided to Mary. Docket 25 ¶ 93 ("Pursuant to the terms of the assignment, [Select Specialty] is entitled . . . to have the Plan compensate it for the Covered Services that were preauthorized under the Plan."); *id.* ¶ 94 ("[A]s [Mary's] assignee, [Select Specialty] is entitled to payment from the Plan for the Covered Services that were preauthorized."); *id.* at 13 ("Select [Specialty], as assignee, is entitled to require the Plan pay out benefits in accordance with its terms for services that were preauthorized."). It repeats this claim in its brief, stating that, "as Mary's assignee, [it] is entitled to recover damages based on what *it* would have and should have received, but for" Mary's allegedly wrongful termination from the Plan. Docket 81 at 2 (emphasis added).

But these claims for payment for the services it provided to Mary are inconsistent with Select Specialty's request for a declaratory judgment that it has standing to assert Mary's rights under the Plan. Assuming Mary validly assigned her rights under the Plan to Select Specialty, then, as Select Specialty notes, it "stands in the same shoes" as Mary. Docket 81 at 16 (quoting *In re Estate of Wurster*, 409 N.W.2d 363, 366 (S.D. 1987) (Wuest, C.J., dissenting)).

7

This means that Select Specialty can seek only those rights and benefits that *Mary* had under the Plan. *See Kobberman v. Oleson*, 574 N.W.2d 633, 636 (S.D. 1998) ("By assigning a thing in action, of course, assignors grant no greater rights than they possess." (citing *Gilbert v. United Nat'l Bank*, 436 N.W.2d 23, 25 (S.D. 1989)). The amount of money Select Specialty would have received but for the termination then is irrelevant. Select Specialty can only recover the difference between the contracted rate and the Medicaid rate for the services it provided if *Mary* had a right to recover that difference. Select Specialty does not even attempt to locate a provision of the Plan that gives Mary this right, and the court finds none. *See generally* Dockets 37-2, 49-1.

Select Specialty does allege that defendants "breached [their] fiduciary duty" in wrongfully terminating Mary from the Plan and "in placing the avoidance of paying for care that the Plan legitimately owed and had preauthorized over and above [Mary]'s best interests." Docket 25 ¶ 89. It also alleges that defendants "knew that [Mary] would receive higher quality care if she remained covered under the Plan than . . . under Medicaid [but] nonetheless . . . relegated [Mary] to the lower-quality benefits in order to avoid legitimate expenses for preauthorized procedures." *Id.* ¶ 90.

On its face, a breach of fiduciary claim is of the kind that Select Specialty could assert on Mary's behalf, assuming she validly assigned her rights under the Plan. "In order to recover on a claim for a breach of fiduciary duty, a plaintiff must prove . . . that the defendant's breach of [that] duty was a cause of the plaintiff's damages." *Grand State Prop., Inc. v. Woods, Fuller, Schultz, &*

8

*Smith, P.C.*, 556 N.W.2d 84, 88 (S.D. 1996) (citing *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993)). But Select Specialty does not allege any harm or damages that Mary experienced because of her allegedly wrongful termination or any other breach of fiduciary duty. In fact, Select Specialty agrees with defendants that Mary has not been harmed by her termination from the Plan. *See* Docket 83 ¶¶ 2, 8-9 (not disputing that Mary "is doing well," that she "has not been denied any necessary treatment since her coverage under the Plan was terminated," and that "[a]ll of Mary's medical bills since March 1, 2018, have been covered by Medicaid."); *see* Docket 81 at 3 ("Select Specialty is not seeking a declaratory judgment stating that Mary has been harmed based on the quality or scope of medical care provided to her under Medicaid coverage."). In fact, Select Specialty says that any harm to Mary after leaving Select Specialty is irrelevant. *See* Docket 81 at 16 ("[A]ll of the evidence submitted as to the course of care provided to Mary *after* she left Select Specialty's facilities is irrelevant to the analysis."); *id.* at 4 ("Select Specialty is not . . . contending that it stands in Mary's shoes in arguing collateral damages that resulted months or years after her wrongful termination."). Its argument that Mary has not suffered damages and that any damages are irrelevant is inconsistent with its claim for a declaratory judgment that it has standing to assert Mary's rights under the Plan.

Because Select Specialty has not attempted to show that Mary is entitled to payment from the Plan for services that Select Specialty provided or to show that she has experienced any damages from being terminated from the Plan,

9

the court finds that Select Specialty's claim for declaratory relief is merely "a thinly disguised attempt" to recover money damages from defendants. *See Weinreb*, 285 F. Supp. 2d at 388. These damages—the difference between the contracted rate for the services that Select Specialty provided to Mary and the amount it was paid by Medicaid—are the same damages it sought in the claims that this court held were barred by 42 C.F.R. § 447.15. *See* Docket 68 at 14 (denying Select Specialty's breach of contract, unjust enrichment, and quantum meruit claims because although the theories of recovery differed, "at the heart of each is that Select Specialty is seeking payment for the services it provided to Mary and for which it has accepted Medicaid payment."). Though styled as a claim for declaratory relief, the substance of this claim and Select Specialty's arguments in support of it demonstrate that it is no different from the claims on which the court has already granted summary judgment.[2] Thus,

---

[2] In addition to requesting payment for the services it provided to Mary, Select Specialty's claim for declaratory relief includes a request for declaratory judgment that it "has standing to assert [Mary's] rights under the Plan and to contest the purported termination of her coverage under the Plan[,]" and that "the purported termination of [Mary's] coverage is contrary to law and otherwise void and ineffective[.]" Docket 25 at 13. Although a claim for declaratory relief contemplates that an injury may not yet have occurred, for a claim to be justiciable there must still be "a dispute or controversy as to legal rights . . . which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served." *See Danforth v. City of Yankton*, 25 N.W.2d 50, 53 (S.D. 1946).

Select Specialty claims that "[a]n award of declaratory relief finding that her termination was wrongful . . . would insulate [Mary] from any allegation that she defrauded Medicaid by failing to correct the objectively false information that she lacked any source of private insurance in the SSI application." Docket 81 at 17. But Select Specialty fails to explain how. It is possible that the termination was wrongful and that Mary or someone acting on her behalf provided false information on her benefits application. Select Specialty also

the court grants defendants' motion for summary judgment on Select Specialty's claim for declaratory relief.

## CONCLUSION

Because the court finds that Mary did not have a right to the money damages Select Specialty is seeking and because Select Specialty has failed to show that Mary was harmed by her termination from the Plan, it is

ORDERED that defendants' motion for summary judgment (Docket 73) is granted.

Dated September 14, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

---

implies that a ruling that the termination was wrongful would allow Mary's coverage under the Plan to be reinstated. *See id.* at 18; Docket 25 ¶ 92. But Select Specialty has not put forward any evidence that Mary wants her Plan coverage to be reinstated. *See* Docket 83 ¶¶ 2, 8-9. And it does not allege that Mary assigned Select Specialty the right to make such decisions on her behalf. Thus, the court concludes that a ruling on these requests for a declaratory judgment would not serve a useful purpose, and the court will not rule on these specific requests. *See Danforth*, 25 N.W.2d at 53.